*Southern District*
**ERIC HUIKARI - Appellee**
**v.**
**ALLEN EASTMAN - Appellant**

*Present*: Nash, P.J., Cox & *Murphy, J.J.

Case tried to *Kupka, J.* in the Fourth District Court of Plymouth, No. 11011.

*Murphy, J.* This is an action of contract and tort in four counts, seeking to recover the cost of certain cranberries sold by the appellant to the appellee who in turn sold them to the C & E Canning Company of Hammonton, New Jersey. It was tried with a cross-action No. 11,045 *Eastman v. Huikari,* decided by us this day.

The declaration alleges that the apppellee was acting as a commission agent in the sale of the cranberries to the said C & E Canning Company; that the greater part of the berries sold to the C & E Canning Company were raised by the appellant; that due to the fact that the appellant had used amino-triazole on his bogs, the berries were contaminated, and the government confiscated all of them. Further that the appellant had wilfully represented to the appellee that he had not used amino-triazole on his cranberry bogs well knowing that he had used the same; that by reason thereof the appellee was damaged.

The answer is a general denial. The court found for the appellee on count one in the

sum of $3,090.25, for the appellee on count two in the sum of $3,012.00, and for the appellant on counts three and four.

*At the trial there was evidence tending to show that* the parties had done business in the years 1957, 1958 and 1959. The appellant, Eastman, is a cranberry grower. The appellee purchased cranberries from him in all those years for the purpose to resale to canners. He is a commission agent. He was not to pay the appellant for the berries until he had been paid, however, because of the financial strain the appellant was under at the time, the appellee advanced the money for the berries.

On *October* 26, 1959, the appellee shipped to C & E Canning Company in Hammonton, New Jersey, 526 fifty pound bags of cranberries he had purchased from the appellant together with 179 bags of two other growers, namely, Haarala & Selmi. On *October* 29, he similarly shipped 502 fifty pound bags he had purchased from the appellant and 260 bags he had purchased from other growers, namely, Kangas, Selmi and Kivi. All of these berries were in cloth bags. On *November* 4th, a third shipment was made, 361 fifty pound bags coming from the appellant's bogs and 367 bags from the other grower's bogs; the 367 bags were identifiable from those of the appellants as they were in paper bags. The appellant's berries were packed in cloth bags. The fair market value of all berries shipped was $12.25 per 100 pounds. The

berries sent on *October 26* and *October 29* were destroyed by the Federal Government as they were found to contain amino-triazole.

Haarala and Kivi, two of the other growers mentioned, had not used amino-triazole on the bogs from which the berries sold to the appellee were taken. The appellant contends that he used amino-triazole on his bogs in accordance with the method approved by the Cranberry Experiment Station, the manufacturers of amino-triazole, and the instructions from the United States Department of Agriculture. There was a conflict of evidence as to whether this was so. A chemical test of the third lot containing his berries showed the presence of amino-triazole. The remaining berries from other growers showed no evidence of amino-triazole.

Some time in *early November,* 1959, the appellee was informed that the first two loads of berries shipped had been seized by the government and he so informed appellant Eastman. Sometime after *November* 9th and after several conversations regarding the berries, the appellant gave the appellee a hand-written statement *stating that he had not used amino-triazole.* The appellant testified that he had not used amino-triazole on any any bogs from which he harvested berries in 1959. The judge *found as a fact that he had used it* and had used it improperly.

On *November 25,* 1959, Fehmerling Associates of Bridgeton, New Jersey representing C & E Canning Company of Hammonton,

New Jersey delivered to the Dairy Laboratories in Philadelphia a quart of frozen cranberries to be analyzed for amino-triazole. The sample was analyzed and found to contain .4 parts per milllion of amino-triazole. These berries were from the third load and were identified as the appellant's berries. No samplings were taken from the first two loads. Arthur Enera, Vice-President and Treasurer of C & E Canning Company, testified that a food and drug inspector condemned the first two loads, that they were destroyed under the inspector's supervision; that the berries in the paper bags in the third load which came from another grower were not condemned. C & E Canners destroyed the Eastman berries in the third lot. He further testified as to the receipt of the three shipments of berries from the appellee, and that he had received a notice from the court of the institution of proceedings in two cases. This notice was received in evidence over the objection of the appellant.

Dr Chester Cross, a weed control expert in charge of the Cranberry Experiment Station in Wareham gave *extensive evidence relative* to the *use and control of amino-triazole.* Amino-triazole is a weed killer. Its use is registered by the United States Department of Agriculture when used on the basis of 16 pounds of amino-triazole solution and 300 gallons of water per acre, applied seven to *ten days after harvesting,* and it could be used in the growing season in ditches at the rate of

20 pounds per acre when mixed with 10 pounds of dalapon, a substance which would kill any plants or berries which the solution struck, but amino-triazole could not be used in the *growing season without the dalapon mixture.* The Department of Agriculture had ruled that if amino-triazole were used in the growing season without the dalapon mixtuure, the berries would cause cancer if consumed. The pest harvest use of amino-triazole was cleared by the Food and Drug Administration in 1958. The cranberry experiment put on an extensive educational program directed to the cranberry growers concerning it use in 1958. On the *ninth of November,* 1959, the Food and Drug Administration of the United States Department of Health, Education and Welfare issued an order prohibiting the sale of cranberries which contained any amount of residue of amino-triazole.

The appellee paid the appellant $3,090.25 on *November* 7, 1959 and $3,012.00 on *November* 16, 1959. These payments were for the berries sold by the appellant to the appellee which were shipped in the first and second lots and are the berries that the appellant refers to in the first and second count of the declaration. He has not paid for the berries supplied to him by the appellant which was shipped by the plaintiff in the third load. These berries were referred to in counts three and four of the declaration.

The defendant objected to the admission of

uncertified copies of the complaint and citation, purportedly issued out of the United States District Court of Philadelphia.

The appellant duly filed eight requests for rulings. We take particular notice of Nos. 3 and 5 which the court allowed and which read as follows:

3. There can be no recovery except for the direct results of the statements alleged by the plaintiff to have been falsely made by the defendant.

5. The defendant did not knowingly make a false statement of a material fact to the plaintiff.

The court denied the other requests, except 8B which it allowed and made the following special findings:

"The defendant sold to the plaintiff cranberries that were contaminated by amino-triazole—the result of which said cranberries were not fit for human consumption, and were condemned and seized by the United States Government acting on a warrant of seizure and monition.

"The cranberries sold by the defendant to the plaintiff were not marketable and the defendant was aware or should have been aware of this in that the appellant used said amino-triazole in spraying the cranberries, knowing that it was dangerous and harmful.

"There is no credible evidence to support the appellant's requests.

"The appellee is entitled to recover $6,102.25 being the amount the appellee paid

to the appellant for said contaminated cranberries."

Subsequent to the entry of the finding on counts one and two, the defendant seasonably moved to vacate the finding, as follows:

"The defendant says that the findings for the plaintiff on count one and two of his declaration is inconsistent with the allowance of defendant's requests for rulings No. 3 and 5, and with the special findings of the court. Wherefore, the defendant moves that the finding for the plaintiff on counts one and two of his declaration be vacated and that a new finding be entered for the defendant on each count."

The court made the following findings and denied the motion.

"In the matter of vacating the finding made by the court, the defendant raises the question of inconsistency in the allowance of his requests numbered 3 and 5—to clarify the matter the court finds that:

"The defendant was an experienced grower of cranberries and as such was aware of the various sprays and solutions that were in use in this type of farming; that it became common knowledge that amino-triazole could not be used with safety, despite this knowledge the defendant did use it on certain bogs resulting in a crop of berries that were not fit for human consumption, having this knowledge and failing to heed the warning and advice of the agricultural county service, the defendant continued to use the amino-triazole,

this fact the defendant did not disclose to the plaintiff and if the failure to disclose it constituted a false statement then I so find. I find that it was the duty of the defendant to disclose the use of amino-triazole on the cranberries and in so doing the defendant acted in bad faith in his dealings with the plaintiff.

"The defendant's cranberries were duly identified as being the ones that were contaminated and not being fit for human consumption and were ordered destroyed by a due order of the United States Court.

"The defendant was not entitled to be paid until the plaintiff had resold the berries in New Jersey but that due to the financial strain that the defendant was under, the plaintiff advanced monies to the defendant on the reliance that the berries of the defendant were marketable."

The appellant claims to be aggrieved by the denial of request for rulings No. 1, 2, 4, 6, 7 & 8, and by the findings for the appellee under counts one and two, in spite of the allowance of request for rulings 3 & 5; by the admission of evidence by the court of uncertified copies of federal court petition in each case and by the denial of appellant's motion to vacate the finding.

The appellant has filed a lengthy and informative brief which among other things disputes many of the facts found by the judge. We cannot properly disturb these findings. There is ample evidence in the record before us to sustain them and generally

speaking, findings of fact are not reviewable by this court and are not open on appeal. *Kelsey v. Hampton Court Hotel,* 327 Mass. 150 and cases cited.

The appellant first stated that he did use amino-triazole on the bogs, but only in accordance with the instructions given by the United States Department of Agriculture and others. Later he gave a written statement to the effect that he did not use it at all and so testified. The judge found as a fact that he did use it and used it wrongfully, despite the fact that as a grower of cranberries for several years, he knew or should have known that such use of this amino-triazole was not safe. Ample instructions had been given all growers as to its proper use by the Department of Agriculture in 1958.

The berries in the third load from the other growers were found to be alright. A representative of the Canners Company destroyed the appellant's berries in the third load as they were found to contain amino-triazole. The judge made ample special findings on conflicting evidence that the berries in the first two loads were not marketable; that they were berries from the appellant's bogs; that they were unfit for human consumption because the use of this substance would render the berries unfit for sale, and that he knew or should have known that the use of amino-triazole was unsafe and harmful. These findings are decisive of the case.

The special findings made by the

judge on this conflicting evidence contain ample reasons to justify the denial of requests No. 1, 2, 4, 6, 7 & 8. A judge's general and special findings must be sustained if warranted upon any possible view of the evidence, and the reasonable inferences to be drawn therefrom. *M. DeMatteo Construction Company v. Commonwealth,* 338 Mass. 568, 572 and *Moss v. Old Colony Trust Company,* 246 Mass. 139-143-144 and cases cited.

On the question of the admission of the uncertified copies of the federal court petition, the court had direct testimony before it on this phase of the case from the Vice-President and Treasurer of the C & E Canning Company, who testified that he was present when a Food and Drug Inspector condemned the first two loads of berries, and that they were destroyed under his supervision. The admission of these documents, therefore, was harmless error at best.

The appellant has also raised the question of improper pleading in his brief, namely, that the counts in the declaration were not identified and were improperly joined. That question is not now open to him. *G. Spence, Executrix v. Robert Lawrence, Inc.,* 347 Mass. 765 where the court said, "If as the appellant contends the declaration was defective, he should have demurred or asked for specifications, but having proceeded to trial under it, he cannot now challenge its sufficiency as a pleading." *Drury v. Hartigan,* 312 Mass. 529 and cases cited.

■ The appellant raised the further question in his brief that the allowance of request for rulings Nos. 3 and 5 is inconsistent with the finding for the appellee on counts one and two, and filed a motion to vacate the finding for this reason. After hearing, the judge denied the motion to vacate, and filed an amended decision to clarify the finding which is part of the record before us. Any inconsistency in the allowance of those two requests for rulings, and the finding become immaterial and present no harmful error in view of the theory upon which this case was tried. There was clearly a breach of an implied warranty of merchantability, and a failure to disclose the facts.

We have examined all of the other contentions raised by the appellee in his brief and find them to be without merit.

*Since there was no prejudicial error, an order should be entered dismissing the report.*

Allan M. Hale of Middleboro, for the Appellant.
Edward H. Stevens, of Brockton, for the Appellee.